IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANET R., | ) |
|       Plaintiff, | ) ) ) ) No. 19 C 562 |
| v. | ) ) Magistrate Judge Jeffrey Cummings |
| ANDREW SAUL,<br>Commissioner of Social Security, | ) ) ) ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant Janet R. ("Claimant")[1] brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") that denied her application for Disability Insurance Benefits ("DIBs") under the Social Security Act. 42 U.S.C. §§405(g), 423 *et seq*. The Commissioner has brought a cross-motion. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons stated below, Claimant's motion for summary judgment (Dckt. #13) is granted, and the Commissioner's motion (Dckt. #20) is denied.

**I. BACKGROUND**

    **A.**     **Procedural History**

On June 1, 2015, Claimant filed a disability application claiming a disability onset date of August 30, 2014. Her application was denied initially and upon reconsideration. On October 18, 2017, an Administrative Law Judge ("ALJ") issued a written decision denying benefits to

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, only the claimant's first name shall be listed in the caption. Thereafter, we shall refer to Janet R. as Claimant.

1

Claimant. The Appeals Council denied review on November 29, 2018, making the ALJ's decision the Commissioner's final decision. 20 C.F.R. §404.985(d); *see also Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant subsequently filed this action in the District Court on January 28, 2019.

### B. The Social Security Administration Standard

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §4243(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). It then determines at step two whether the claimant's physical or mental impairment is severe and meets the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii). At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, the individual is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

2

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines his or her exertional and non-exertional capacity to work. The SSA then determines at step four whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if he or she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

  **C.**  **Claimant's Arguments For Remand**

Claimant argues that the ALJ's decision requires remand because (1) the ALJ incorrectly determined at Step 4 that Claimant's prior job as a data entry clerk constituted "past relevant work"; (2) substantial evidence does not support the RFC assessment; and (3) the ALJ improperly considered Claimant's statements about the severity and frequency of her symptoms. For the reasons stated below, the Court agrees with Claimant's first argument and it therefore need not address the remaining two. *See Copeland v. Colvin,* 771 F.3d 920, 927 n.5 (5th Cir. 2014).

  **D.**  **The Evidence Presented To The ALJ**

    **1.**  **Evidence From Claimant's Treatment History**

Claimant suffers from pain in her neck, lower back, knees, and right hand. She complained of serious back pain at a level of 7 out of 10 on July 14, 2015; had moderate pain and a decreased range of motion in her left knee on July 28, 2015; and on October 23, 2015 complained of left knee pain that was worse with a twisting motion. (R. 341, 354, 355, 358). Diagnostic x-rays of the lumbar spine taken on October 24, 2015 showed minimal findings with

only "tiny" anterolateral osteophytes and no evidence of a fracture or lesions. (R. 569). A cervical x-ray and knee x-ray also showed minimal degenerative changes. (R. 570-71). She was instructed to wear a knee brace. (R. 341).

On January 29, 2016, Claimant complained for the first time of bilateral hand pain with greater swelling in her right thumb than in the left. (R. 552). Her doctor recommended screening for rheumatoid arthritis, which was negative as were several subsequent tests for rheumatoid factors. (R. 554, 516, 549). Claimant began her first course of chiropractic care on February 1, when Dr. Lawrence Chan diagnosed her with cervicalgia, lumbago, and knee pain. (R. 451). She did not complain of hand pain at that point, but on May 5, 2016, Claimant told her primary care physician that she was experiencing "severe pain in [the] bones, mostly on hands." (R. 530). She made similar complaints on July 14, 2016. Claimant was diagnosed with tendinitis and prescribed a "thumb spica splint" – a wrist brace – for one month. (R. 526).

The pain in Claimant's joint persisted to the degree that she was referred to a rheumatologist, and Claimant consulted with Dr. Elena Gogoneata on August 5, 2016. Dr. Gogoneata found that Claimant was tender to the touch, had crepitus in the knees, and showed some mild tenderness in the trochanteric bursa. Much of the doctor's – report, however, concerns Claimant's hand and thumb pain. Claimant told Dr. Gogoneata that her hands bothered her more in the morning than later in the day and that most of the pain was at the base of her thumbs. Dr. Gogoneata noted tenderness in both hands. It was greater "in the right more than left carpometocarpal joints," however, and was accompanied by bony deformities at that level. Dr. Gogoneata diagnosed osteoarthritis in the cervical spine, lower spine, and knees. She also stated that a "similar process" was taking place in Claimant's fingers and that the bony

4

deformities led her to a diagnosis of osteoarthritis of the hands. Dr. Gogoneata prescribed Voltaren gel for Claimant's fingers and naproxen for her general arthritic pain. (R. 567).

Claimant's hand pain continued, however, and she returned to her primary care physician on November 4, 2016 complaining of "constant" right-hand pain at a 3/10 level. (R. 495-96). Claimant was referred to physical therapy a few months later in February 2017 for pain in her knees and lower back, but she also complained of right-hand pain at a 7/10 level that was aggravated by "lifting, carrying, and repetitive movements." (R. 577). She made similar complaints at 12 subsequent therapy sessions. Her right-hand pain – which Claimant's therapist described as "significant" (R. 623) – gradually decreased to a level of 4/10 by her last session on April 28, 2017. (R. 630).

### 2. Evidence From the State Agency Experts

On September 16, 2015, Dr. Richard Smith issued a report for the SSA finding that Claimant did not have a severe impairment. (R. 91). Dr. Sandra Bilinsky reached the same conclusion at the reconsideration level on January 8, 2016. (R. 98). As a result, neither doctor issued any RFC assessments.

As part of her disability application, Claimant was examined on August 25, 2015 by Dr. Seth Osafo. Dr. Osafo found no limitations in the range of motion in any of Claimant's joints and also assessed normal grip strength and muscle strength. He determined that Claimant could perform both fine and gross manipulation in a normal fashion. Dr. Osafo also noted that Claimant's cervical pain was related to degenerative disc disease and that her lower back pain contributed to her overall condition. He determined that Claimant would be able to sit, stand, walk, carry, and handle objects without limitations. (R. 316-19).

### 3. Claimant's Testimony Concerning Her Physical Condition

Claimant appeared at a hearing on May 19, 2017 with her attorney and a Spanish translator. The attorney notified the ALJ that Claimant had been treated for polyarthritis, including arthritis of the hands. (R. 55). Claimant told the ALJ that she last worked as a "time clerk" entering data but that her hands and legs became numb and "would go to sleep" throughout the day. (R. 61-62). Her right hand was the primary source of trouble at that time, but Claimant told the ALJ that she currently had problems in both hands and especially in her thumbs. (R. 62). She can no longer grab anything or open cans. Her symptoms have become worse over time and now cause her to lean on things to support herself at times. (R. 65).

Claimant stated that her pain fluctuates at times. She often has pain in the morning that improves with medication, but several days a week even that does not help. (R. 65-66). The ALJ did not inquire about Claimant's activities of daily living ("ADLs"), but Claimant told her that some days she is unable to both wash and dry clothes and cannot fold laundry at times. (R. 71). She also testified that she was only able to walk up to 15 minutes at a time before needing to rest. (R. 74). Claimant stated that she would like to return to work but that her condition fluctuated in such a manner that she did not "know [how] I'm going to feel, you know, in the morning" and was therefore doubtful that she would be able to work full time. (R. 79).

### 4. Evidence Presented Concerning Claimant's Most Recent Employment

A summary of Claimant's FICA (Federal Insurance Contributions Act) earnings for the years 1999 through 2017 indicates that Claimant most recently earned $6,547.45 in 2014. (R. 171). Claimant was paid these wages by a staffing agency known as Clear Staff, Inc. (R. 170, 60). The SSA "disability report – adult" form that Claimant first submitted after filing for disability benefits states that Claimant worked the data entry clerk position between March 2014

6

and August 31, 2014. (R. 188-89).[2] However, Claimant testified that she was hired by Clear Staff to work as a data entry clerk in a warehouse from the middle of February until August 31, 2014. (R. 60-61). Along these lines, two SSA "work history reports" that Claimant submitted in June and November 2015 stated that she worked the clerk position between February 2014 and August 2014. (R. 227, 268). Claimant also stated in these reports that she worked 7.5 hours a day for 5 days a week at an hourly rate of $9.50/hr. (R. 228, 269).

## II.     THE ADMINISTRATIVE LAW JUDGE'S DECISION

Applying the five-step sequential evaluation that governs disability analyses, the ALJ concluded at Step 1 that Claimant had not engaged in substantial gainful activity since her alleged onset date of August 30, 2014. Her severe impairments at Step 2 included obesity, osteoarthritis of the lumbar spine, and mild degenerative disc disease of the cervical spine and bilateral knees. None of these impairments met or medically equaled a listing at Step 3 either singly or in combination.

Before moving to Step 4, the ALJ assessed Claimant's description of the severity and frequency of her symptoms and found that the record did not fully support what Claimant had stated on these issues. The ALJ also weighed the few expert reports in the record by giving "some" weight to the findings of Dr. Osafo and only "slight" weight to the conclusions of the state-agency experts that Claimant did not have a severe impairment. The ALJ discounted all three reports on the ground that Dr. Osafo and the non-examining physicians did not have the complete record before them when they issued their reports. The ALJ also assessed Claimant's RFC by limiting her to sedentary work as that term is described in 20 C.F.R. §404.1567(a).

---

[2] The medical record from Claimant's April 2, 2014 medical appointment, which is the earliest medical record in the administrative record, indicates that Claimant told the healthcare provider that she had "[j]ust arrived from Puerto Rico." (R. 414, 412).

7

Claimant was limited to only carrying up to 10 pounds occasionally and "can push and pull as much as she can lift and carry." (R. 37). Claimant can never crawl or kneel but she can occasionally crouch and climb ramps and stairs." (R. 37). No restrictions were placed on her ability to use her hands or fingers.

The ALJ then proceeded to consider at Step 4 whether Claimant's prior work as a data entry clerk was "past relevant work" and, if so, whether Claimant's RFC would permit her to carry out the duties of that position. In her decision, the ALJ stated as follows:

> The claimant testified she performed the job as data entry clerk from mid-February 2014 until August 31, 2014, and only took off work two days. Nevertheless, in the first record after filing for disability benefits, the claimant reported that she began working as a data entry clerk in March 2014 (Exhibit 2E/3). Subsequently, the claimant reported that she began the data entry clerk job in February 2014 (Exhibits 5E, 6E, 10E). In the earliest medical record in the file, dated April 2014, the claimant reported that she had just arrived in the United States (Exhibits 4F/85).
>
> The claimant's representative argued the claimant's work as a data entry clerk was an unsuccessful work attempt.[3] I disagree. I find that the claimant performed the job of data entry clerk for at least six months, from February or March 2014 through August 30, 2014, as this is consistent with the claimant's earliest reporting of her work dates.
>
> I also find that the job was performed above the substantial gainful activity level. In 2014, the monthly substantial gainful activity level was $1,070.00. Earnings records show that the claimant earned $6,547.45 while working at Clear Staff incorporated. Moreover, she reported that she earned $9.50 per hour for 7.50 hours per day for 5 days per week (Exhibit 6E/6). This would yield monthly earnings of $1543 (*See* DI 25005.015 and SSR 82-62; 20 CFR 15.1560, et seq.). Thus, the claimant exceeded the substantial gainful activity level of $1,070.00 per month for those six months. Moreover, the claimant's work did not end [n]or was it reduced to below substantial gainful activity within six months allowing for a

---

[3] In particular, Claimant's counsel argued that Claimant actually worked less than six months based upon the fact that Claimant's earnings would have significantly exceeded her reported FICA earnings if her testimony as to her rate of pay ($9.50/hour), work hours per day (7.50), and days of work per week (5) were found to be true. (R. 58-59).

8

> possible finding of an unsuccessful work attempt and thus, the work activity [was] considered past relevant work.[4] (*See* SSR 05-02; DI 25005.15; DI 11010.145).

(R. 43).

Furthermore, a vocational expert ("VE") testified that the data entry clerk position fell under category 203.582-054 of the Dictionary of Occupational Titles ("DOT"). The job is sedentary under the DOT's criteria, though Claimant had performed it at the light exertional level. (R. 80). The ALJ asked the VE if a person with Claimant's RFC could carry out the duties of a data entry clerk, and the VE stated that such an individual would be able to do so. The ALJ, therefore, found at Step 4 that Claimant was not disabled because she could perform her past relevant work.

### III.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul,* 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart,* 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

---

[4] The Court corrected the apparent typographical errors in this last sentence to make it consistent with the ALJ's findings on this issue.

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent symptom evaluations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## IV. ANALYSIS

### A. The ALJ's finding that Claimant's data entry clerk position was "past relevant work" is based on a legal error and is not supported by substantial evidence

As defined by the pertinent regulation, a position qualifies as "past relevant work" for purposes of the Step 4 analysis "when it was done within the last 15 years, lasted long enough for [a claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §404.1560(b)(1). Claimant, who has the burden on these issues, argues that her work as a data entry clerk does not qualify as "past relevant work" because it was either an "unsuccessful work attempt" or else was not performed at substantially gainful levels. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987) (the claimant bears the burden at Steps 1 through 4); *Palmer v. Barnhart,* 40 Fed.Appx. 278, 282 (7th Cir. 2002) ("claimant bears burden of proving that she was not engaged in substantial gainful activity") (citing to *Callaghan v. Shalala,* 992 F.2d 692, 696 (7th Cir. 1993)); *Brown v. Colvin,* No. 13-13917, 2015 WL 1530769, at *4 (E.D.Va. Mar. 31, 2015) (the claimant "bears the burden at step four of showing an inability to perform any past

10

relevant work"). The Court finds for the reasons stated below that Claimant has met her burden and shown that the ALJ's decision that her data entry clerk position is "past relevant work" is based on a legal error and is not supported by substantial evidence.

> **1. The ALJ failed to make sufficient findings to determine whether Claimant has shown that her work as a data entry clerk was an "unsuccessful work attempt"**

It is well-settled that "'[g]ainful employment' . . . does not include 'unsuccessful work attempts.'" *Kangail v. Barnhart,* 454 F.3d 627, 629 (7th Cir. 2006), *quoting* 20 C.F.R. §404.1574(c). "The Social Security regulations themselves set the date at six months *after* which a work period cannot be deemed an 'unsuccessful work attempt.'" *Janezich v. Barnhart,* 453 F.Supp.2d 1019, 1029-30 (N.D.Ill. 2006), *quoting* 20 C.F.R. §404.1574(c)(5) (emphasis added). The distinction between six months or less of work on the one hand and more than six months of work on the other, is key. An "unsuccessful work attempt" occurs only when the claimant has "worked for a period of *6 months or less*." 20 C.F.R. §404.1574(c)(1) (emphasis added). Conversely, "gainful employment is presumed if the applicant earned more than the specified monthly minimum *for more than six consecutive months*." *Kangail,* 454 F.3d at 630 (emphasis added); *see also* Program Operations Manual System (POMS) DI 11010.145(E) – Unsuccessful Work Attempt (UWA) Overview.[5]

In this case, the ALJ applied an incorrect legal standard by determining that Claimant's work as a data entry clerk would not qualify as an unsuccessful work attempt if she performed the job "for at least six months." (R. 43). Because she incorrectly presumed that Claimant's work in the clerk position for six months (or more) would satisfy the duration component of the

---

[5] This section of the Manual provides illustrative examples of both "a work effort of 6 months or less" (namely, "[w]ork from November 5, 2015, through a date no later than May 4, 2016") and of "a work effort of over 6 months" (namely, "[w]ork from November 5, 2015, through May 30, 2016").

11

gainful employment criteria, the ALJ did not make a factual finding regarding the conflicting evidence as to when Claimant actually began her work in the position. (*See* R. 43 ("I find that the claimant performed the job of data entry clerk for at least six months, from February or March 2014 through August 30, 2014")). The evidence in the record suggests several possibilities as to when Claimant began her work.

Some evidence supports a finding that Claimant worked for *less* than six months in the clerk position. For example, if Claimant's testimony about her rate of pay, hours of work per day, and days of work per week is correct, she would have had monthly earnings of $1,543. (R. 43). Given that Claimant's total earnings for 2014 were $6,547.45 and that she worked only the clerk position in that year, consideration of Claimant's monthly earnings and overall 2014 earnings would lead to a finding that she worked for only 4.24 months in the clerk position. Other evidence is ambiguous on the question of how long Claimant worked in the position. In particular, the report Claimant first submitted after she filed for disability benefits states that she worked in the position from March 2014 through August 31, 2014. (R. 43). If Claimant began her work on March 31, 2014 and worked through August 31, 2014, this would give her six months of work on the nose and leave open the possibility that this was an unsuccessful work attempt. If, conversely, Claimant began her work on or before March 30, 2014, this employment report would show that she worked more than six months in the position. Finally, some evidence (such as the reports Claimant submitted indicating that she began working the clerk position in February 2014) would support a finding that she worked *more* than six months in the position. (R. 43).

Given the differing possible findings as to the duration of Claimant's work in the data entry clerk position and the importance of this issue in terms of determining whether Claimant

engaged in "past relevant work," the ALJ was required to resolve the conflicting evidence and make a factual finding regarding whether Claimant worked either six months or less *or* more than six months in the position. As other courts have recognized, where in reliance "on an incorrect conclusion of law, the Secretary omitted to make factual findings on matters that are essential to a determination of the plaintiff's benefits, remand for taking additional evidence and making additional findings is particularly appropriate." *Slavin v. Sec'y of Dep't of Health, Ed. & Welfare,* 486 F.Supp. 204, 210 (S.D.N.Y. 1980); *Flores v. Heckler,* No. SA-80-CA-551, 1985 WL 71730, at *3 (W.D.Tex. Mar. 20, 1985) (same). Accordingly, remand is warranted so that the ALJ can make factual findings on this issue.

    **2.    The *Chenery* doctrine bars consideration of the Commissioner's alternative argument that Claimant failed to satisfy all of the criteria necessary to show that her work in the clerk position was an unsuccessful work attempt**

The Commissioner argues that even if Claimant could establish that she worked in the data entry clerk position for six months or less, she has failed to meet her burden of pointing to evidence in the record to satisfy the criteria necessary for concluding that this was an "unsuccessful work attempt" ("UWA").[6] Since it is undisputed that Claimant worked more than three months in the clerk position, the Commissioner is correct that Claimant has the burden of showing the existence of one or more additional conditions to establish that the clerk position was an UWA.[7] Claimant disputes that there is no evidence in the record regarding the additional

---

[6] In its brief, the Commissioner inadvertently (and erroneously) suggests that Claimant would have to work in the position for "less than six months" to establish that it was an UWA. (Dckt. #21 at 5). As explained above in Section IV(A)(1), Claimant can establish that her work in the position was an UWA if she worked the job for six months or less.

[7] In particular, because Claimant worked in the clerk position for between three and six months, she must also establish either (a) frequent absences due to the impairment; (b) unsatisfactory work due to the impairment; (c) that the work was done during a period of temporary remission of the impairment; or (d) that the work was done under special conditions. Social Security Ruling (SSR) 84-25, 1984 WL 49799, at *2-3; SSR 05-02, 2005 WL 6491604, at *3.

13

conditions and asserts, in any event, that the Court cannot uphold the ALJ's decision on a ground that she did not rely upon. (Dckt. #23 at 3 (citing to *SEC v. Chenery Corp.,* 318 U.S. 80 (1943)). The Court agrees that the *Chenery* doctrine bars consideration of the Commissioner's alternative argument. *See, e.g., Jeske v. Saul,* 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon"); *Meuser v. Colvin,* 838 F.3d 905, 911 (7th Cir. 2016) (where "the ALJ did not rely on this rationale in his opinion, . . . the Commissioner cannot now rely on it"); *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010) (the *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced").

### 3. The ALJ's factual findings are insufficient to determine whether Claimant's work as a data entry clerk generated sufficient monthly income to qualify as substantial gainful activity

As stated above, Claimant's work as a data entry clerk does not qualify as "past relevant work" unless it "was substantial gainful activity" ("SGA"). 20 C.F.R. §404.1560(b)(1). SGA requires "significant and productive physical or mental duties," 20 C.F.R. §404.1510, that generate earnings greater than a monthly amount based on a calculation linked to the national average wage index. *See, e.g., Kangail,* 454 F.3d at 630. The ALJ found, and the parties agree, that the applicable monthly SGA level is $1,070. (R. 43). SGA is presumed if a claimant earned more than the specified monthly minimum for more than six consecutive months. *Kangail,* 454 F.3d at 630. Conversely, a rebuttal presumption that work was not SGA arises where the claimant's earnings are below the monthly minimum. *Copeland*, 771 F.3d at 927; *Brown*, 2015 WL 1530769, at *4, 6.

Claimant argues that even if the record established that she worked from February 2014 through the end of August 2014 (a seven-month period), the ALJ failed to make sufficient factual

14

findings to resolve the conflicting evidence regarding Claimant's income from her data entry clerk work. The Court agrees. If the report of Claimant's FICA earnings for 2014 is accurate, Claimant's average monthly earnings would have been only $935.35 ($6,547.45 divided by 7). This amount is below the monthly SGA level of $1,070, and a rebuttable presumption that the clerk position was not SGA would arise. For reasons unexplained, however, the ALJ instead credited Claimant's testimony as to her rate of pay, hours of work per day, and days of work per week and found that her monthly earnings were $1,543. (R. 43).

The ALJ's finding that Claimant worked six months at the $1,543 monthly rate supported by her testimony (R. 43) yields total earnings of $9,258. This figure stands in stark contrast with Claimant's total reported FICA earnings of $6,547.45 for 2014.[8] Of course, if Claimant worked *more* than six months as required for the clerk position to qualify as "past relevant work," the discrepancy between her expected income at the rate supported by her testimony and her reported earnings would be even greater. The ALJ failed to make findings to reconcile the discrepancy between what she found to be Claimant's earnings and Claimant's actual earnings. Because she did not make such findings, the ALJ failed to articulate an "accurate and logical bridge" from the evidence to her ultimate finding that Claimant engaged in SGA. As such, the ALJ's finding that Claimant engaged in SGA is not supported by substantial evidence and this case must be remanded for further factual findings. *See, e.g., Craft,* 539 F.3d at 673; *Slavin,* 486 F.Supp. at 210; *Flores,* 1985 WL 71730, at *3.

---

[8] Claimant's testimony that she missed only two days of work while she was in the data entry clerk position (R. 63) precludes the theoretical possibility that Claimant had a sufficiently high rate of absence to account for the discrepancy between what she would have earned if she worked every day and what she actually earned.

15

### 4. Remand is the appropriate disposition under the circumstances of this case

Claimant argues that this case should be remanded for an award of benefits. The Seventh Circuit has held that "[i]n unusual cases . . . where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits." *Kaminski v. Berryhill,* 894 F.3d 870, 875 (7th Cir. 2018). This is not such an "unusual case." As the Commissioner argues and this Court has found, there are factual issues that must be sorted out and resolved by the ALJ on remand. Under these circumstances, remand for further factual developments – and not an award of benefits – is the appropriate disposition. *See, e.g., Williams v. Saul,* No. 2:19-CV-445 DRL, 2020 WL 5269890, at *4 (N.D.Ind. Sept. 4, 2020) (applying *Kaminski* and holding that remand was the appropriate remedy where "the factual issues . . . have not been resolved").

### CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment (Dckt. #13) is granted and the Commissioner's motion for summary judgment (Dckt. #20) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings and factual findings consistent with this Memorandum Opinion and Order.

                                                                                    _____
                                                                                    **Hon. Jeffrey Cummings**
                                                                                    **United States Magistrate Judge**

**Dated: April 12, 2021**